## THE ALENE.

### (District Court, E. D. New York. May 12, 1902.)

COLLISION—STEAM AND SAILING VESSELS CROSSING.

The captain of a steamship ordered her helm hard astarboard for the purpose of passing under the stern of a schooner, which was then, as he testified, 3½ points on his port bow, and about 3,000 feet distant, on a course crossing that of the steamship at an oblique angle. The steamer then proceeded on a course which would have taken her under the stern of the schooner if the starboard helm had been continued, but for some reason unexplained, apparently through the fault of the helmsman, the course to port was not continued, and when near the schooner the steamship bore directly down on her, sinking her, and drowning a number of her crew. Held, that the steamship was solely in fault, the schooner having no time after the danger became apparent to take any effective measures to avoid the collision.

In Admiralty. Suit for collision.

Lindsay, Kremer, Kalish & Palmer and Carter & Ledyard, for libelants.

Wheeler, Cortis & Haight, for claimant.

THOMAS, District Judge. At 2 p. m., on the 17th day of August, 1901, the steamship Alene came in collision with the schooner James Gordon Bennett, sinking her, and drowning four of her crew. For the loss of the schooner and the personal effects of her crew this libel is filed. The Bennett was a pilotboat navigated by pilots and apprentices. The wind was fresh from the southward, and shortly before the accident the Bennett had been sailing easterly, on a course north of the Scotland lightship. After having hauled in her flying jib, and taken two reefs in her mainsail, she went about on the port tack. At about the time the Bennett was going about on the port tack, the steamship Alene, having come easterly through Gedney channel, was dropping her pilot at the steam pilotboat, which was stationed on the course the steamship was taking at the time, and at a point northward and westward of the place where the Bennett went about. Thereafter the Alene changed her course "first to southeast, and then a little south," as her captain states, and came forward with increasing speed. The only persons forward in charge of navigation of the Alene were the captain on the bridge, who was the only lookout, and Anderson, the man at the wheel, which was situated directly under the bridge. The captain of the Alene states that when some 3,000 feet away he saw the schooner three and a half points on his port bow, headed about southeast on the port tack, and that he then gave the wheelman orders to starboard. Thereafter the course of the Alene was directed so that she, with a continuing starboard wheel, should have passed under the stern of the schooner, and so she would have done

had the orders of the captain been executed. But the captain testified, "When the pilotboat was nearly just ahead, then my ship stopped going more to the port." Then the captain again gave the order to starboard, but he did not know whether the order was obeyed. For some reason unexplained, as Anderson was not a witness, the intended course to port so as to pass under the stern of the Bennett either was changed or was not continued, and the Alene bore directly down upon the schooner. When this was discovered, Mix, who was in charge of the wheel of the Bennett, called warningly to the Alene, although the witnesses for the Bennett testify that no one could be seen on the Alene until a person with lace on his cap was seen running across the bridge and telephoning. But the call of Mix was fruitless, and thereupon the alarm was given to those on the sailing vessel, but the collision was inevitable, and shortly followed.

The evidence of the captain of the Alene leaves no doubt of the culpable negligence of the steamship. The fault was that of Anderson at the wheel, who in disregard of the captain's repeated orders, or in negligent fulfillment of them, suddenly directed the steamship upon the schooner. Upon discovering the jeopardy, the captain of the Alene did all in his power to avoid the accident or diminish the injury, but his discovery and action thereupon came too late. It is urged that the statement of the captain concerning the distance at which he saw the Bennett on the port tack should be disregarded, and that it should be inferred that the interval was very much less. There is little danger that the captain, with the responsibility for disaster resting upon him, would exaggerate this all-important matter. He was the man in command, he was the sole lookout, he had superior opportunity to know, he alone of those on the Alene gave evidence, and that evidence must be accepted, notwithstanding the admirable argument of the claimant's advocate. .

It is further urged that the schooner was negligent in not keeping a better lookout, and maneuvering in such a way as to avoid the collision after it was seen to be impending. The persons in control of the schooner were Sandy Hook pilots, and undoubtedly expert in the handling of vessels. The evidence of the captain of the Alene shows that he intended to go under the stern of the schooner, and such intention was indicated for some time by the course taken by her. The faulty operation of the wheelman did not produce its effect upon her heading until it was too late for those on the pilotboat to avoid the results of the steamer's negligence. The plain fact is that this accident was caused by gross and inexcusable negligence on the part of the wheelman, and the persons on the pilotboat, misled by the previous course of the Alene, and startled from a condition of justly expectable safety by the menace of destruction, were not in fault for failure to apprehend the sudden danger and to attempt to avoid its consequence. No one more than the captain of the Alene was shocked by the swift change of conditions, and so rapid was the alternation from security to peril that he, in his commanding position from the bridge, did not know how the accident came to pass.

It is concluded that the libelant should have a decree for damages and costs.